IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

BOBBY DWAYNE WILLIAMS                                                                    PLAINTIFF

        v.                              Civil No.   12-6130

CORPORAL BOLES, Ouachita River
Correctional Unit (ORCU); CORPORAL
MAYHUE (ORCU); SERGEANT J. McDERMOTT,
(ORCU); LIEUTENANT ADAM CLARK;
SERGEANT K. HOLMES (ORCU); CORPORAL
CARPENTER, (ORCU); CORPORAL McDORMAN,
(ORCU); LIEUTENANT PARKER, (ORCU);
CAPTAIN STRAUGHN, (ORCU); MAJOR
McHAN, (ORCU); CORPORAL GREEN (ORCU)                                                     DEFENDANTS

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

      This is a civil rights action brought by the Plaintiff, Bobby D. Williams, pursuant to 42 U.S.C. § 1983.  Plaintiff proceeds *pro se* and *in forma pauperis*.

      The Plaintiff is incarcerated in Ouachita River Correction Unit (ORCU) of the Arkansas Department of Correction (ADC).  The case is before the Court on Defendants' motion for summary judgment (Docs. 35-37) and Plaintiff's response (Doc. 38).  The motion is ready for decision.

**1.  Background**

      Plaintiff has filed this lawsuit against the ADC and numerous of ADC personnel employed at the ORCU.  Plaintiff has a number of serious medical conditions: CML;[1] gout; diabetes; and high blood pressure.

      On October 7, 2012, Plaintiff was given a disciplinary violation for failing to follow Sergeant Clark's orders.  The disciplinary was written by Sergeant Delaney.  Sergeant Clark is not a named

---

[1] Chronic myyelogenous leukemia is a slow progressing cancer of the blood cells.
http://www.mayoclinic.org/diseases-conditions/chronic-myelogenous-leukemia/basics/prevention/CON-20031517 (accessed August 20, 2014).

Defendant.

On October 15, 2012, Plaintiff asserts that Corporal Boles, Corporal Mayhue, Sergeant McDermott, and Lieutenant Clark placed him on punitive isolation as they were inventorying the Plaintiff's property. (Doc. 1 at pg. 4). Out of the blue, Plaintiff maintains that Corporal Boles, Corporal Mayhue, and Sergeant McDermott, within the hearing of the other inmates, said that Plaintiff was in jail for raping his daughter. (Doc. 1 at pg. 5). Since then, Plaintiff indicates that he has been threatened and harassed by other inmates. *Id.* He maintains that the officers' actions show racism.

Plaintiff maintains that Sergeant McDermott, Corporal Boles, and Corporal Mayhue have threatened to put something in his food or drink and have said they would pay someone to cause Plaintiff bodily harm. (Doc. 1 at pgs. 5-6). From October 16th to October 27th, Plaintiff states he was unable to take his chemo pill, his insulin, or his high blood pressure medication and was losing a lot of weight. *Id.* at pg. 6. During this same time period, Plaintiff maintains he had to wash himself with his dirty boxers. *Id.* He also asserts that his boxers and hand towels were confiscated. *Id.* He indicates he was forced to wear someone else's boxers.

On December 29, 2012, at approximately 8:00 a.m. Plaintiff was awaken by Corporal Carpenter and Corporal McDorman. Plaintiff maintains he was dragged from his bed and hand cuffed. Plaintiff indicates that the cuffs were so tight that he lost feeling in his left hand and the cuffs broke his skin. Plaintiff asked to see the either the lieutenant or the captain on duty that day.

Plaintiff cell was searched. According to Plaintiff, when they couldn't find anything Corporal Green and Corporal McDorman threw him to the floor. Plaintiff maintains they planted some pills in his cell. He notes the medication was for diabetes and was a medication his cell mate took. While Plaintiff has diabetes, he is on insulin in the form of shots he must take three times a

day.

Plaintiff states he was written a bogus disciplinary. The disciplinary was written by Corporal McDorman and he states that he and Corporal Carpenter conducted the shake down of Plaintiff's cell. (Doc. 6 at pg. 6). Plaintiff was charged with possession of a drug, insolence to a staff member, using abusive or obscene language to a staff member; failure to obey a verbal or written order of staff; and asking, coercing or offering inducement to anyone to violate policies, procedures, rules, regulations, or federal laws. (Doc. 6 at pg. 6).

Plaintiff maintains the disciplinary judge will always find something that you will be guilty of. Plaintiff asserts that all of these actions were taken because of his race. He believes the December 29th disciplinary charge and his being found guilty of it was in retaliation for his filing of this lawsuit. If the video tape for December 28th and 29th is reviewed, Plaintiff maintains it will show who planted the pills under his mat. (Doc. 6 at pg. 6).

On December 31st, Plaintiff indicated he asked Warden Golden to look at the video tape of how the officer's threatened him. Plaintiff believes they want to kill him because it costs too much for his medial care.

By affidavit, Adam Clark states that Plaintiff received numerous disciplinary charges by different officers for violating disciplinary rules. *Defts' Ex.* 2 at ¶ 8. With respect to the December 29th incident, Clark indicates that McDorman charged the Plaintiff with major disciplinary charges for the drugs and other inappropriate behavior during the shake down. *Id.* at 2(B) at pg. 46. The only Defendants involved in this incident are Carpenter, McDorman, Parker, and Straughn. *Id.* at 2 at ¶ 13.

Plaintiff had a disciplinary hearing and was found guilty. *Defts' Ex.* 2 at ¶ 15. He was present at the hearing and made a statement. *Id.* at 2(B) at pgs. 47-52.

### 2. Applicable Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing, Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

### 3. Discussion

In his response, Plaintiff asks that his claims against Sergeant Holmes, Corporal Green, and Lieutenant Parker be dismissed from the case. This request should be granted.

Defendants maintain the Plaintiff failed to exhaust his administrative remedies prior to bringing this lawsuit. As such, they maintain the Prison Litigation Reform Act (PLRA) bars this action. Plaintiff asserts that he was prevented from pursuing his grievances beyond unit level.

The ADC grievance policies and procedures, at the time in issue, are set forth in Administrative Directive 12-16 ("Directive 12-16"). Directive 12-16 sets forth a multi-step

procedure. Step One calls for an attempt to resolve the issue informally. Directive 12-16 states in pertinent part:

> Inmates are required to attempt informal resolution of a problem/complaint prior to filing a grievance . . . On the Unit Level Grievance Form . . . the inmate should write a <u>brief statement</u> that is specific as to the substance of the issue or complaint to include the date, place, personnel involved or witnesses, and how the policy or incident affected the inmate submitting the form.

Directive 12-16, IV(E)(2), *Defts' Ex.* A (Doc. 37-2) at pg. 60  (emphasis in original).

If a grievance is not resolved informally, the inmate may proceed to Step Two. Step Two provides in pertinent part:

> After attempting to resolve their issue through Step One, informal resolution, an inmate can proceed to Step Two by filing a formal grievance on the *same* Unit Level Grievance Form . . . that was used for Step One . . . .

Directive 12-16, IV( F), *Defts' Ex.* A at pg. 60 (emphasis in original).

In Step Two, the grievance officer upon receipt shall assign a number to the grievance and log the date the grievance was received, the inmate's name, ADC number, type of grievance, and the text of the inmate's complaint contained within the appropriate space on the form. Directive 12-16, IV(F), *Defts' Ex.* A at pg. 64. The grievance officer is to provide either an acknowledgment or rejection of the unit level grievance form within five working days after receipt. *Id.*

> Every inmate shall receive a written response on either the form entitled Warden/Center Supervisor Decision to his or her grievance signed by the Warden or the Warden's designee within twenty working days of receipt . . . .

Directive 12-16, IV(F), *Defts' Ex.* A at pg. 65.

> After receiving a response from the . . . Warden . . . or designee, if the inmate is not satisfied, he or she may appeal within five (5) working days to the appropriate Chief Deputy/Deputy/Assistant Director who will attempt to resolve the matter or assign an appropriate staff member to do so.

Directive 12-16, IV(G), *Defts' Ex.* A at pg. 66.

> The Chief Deputy/Deputy/Assistant Director will respond in writing to the inmate concerning the decision [on his appeal] within thirty (30) working days . . . A written decision . . . at this level is the end of the grievance process.

Directive 12-16, IV(G)(6), *Defts' Ex.* A at pg. 67.

> Finally, Directive 12-16 advises inmates of the PLRA limitations:

> Inmates are hereby advised that they must exhaust their administrative remedies as to all defendants at all levels of the grievance procedure before filing a Section 1983 lawsuit and Claims Commission claim.  If this is not done, their lawsuits or claims may be dismissed immediately.

Directive 12-16, IV(N), *Defts' Ex.* A at pg. 73.

If the time frames set forth above are not complied with, the inmate may proceed to the next step.  Directive 12-16, IV(E)(11)(step one); IV(F)(8)(step two).

Additionally, the Unit Level Grievance form also includes the following statement: "**BRIEFLY** state your one complaint/concern and be specific as to the complaint, **date**, place, name of personnel involved and how **you** were affected." *Defts' Ex.* A at pg. 74 (emphasis in original).

The Prison Litigation Reform Act ("PLRA"), mandates exhaustion of available administrative remedies before and inmate files suit.  Section 1997e(a) of the PLRA provides: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S. C. § 1997e(a).

In *Jones v. Bock,* 549 U.S. 199 (2007), the Supreme Court concluded that "to properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules." *Id.* at 218 (internal quotation marks and citation

omitted). The Court stated that the "level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to clam, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.*

The Court of Appeals for the Eighth Circuit has recognized only two exceptions to the PLRA's exhaustion requirement: (1) "when officials have prevented prisoners from utilizing the procedures;" and (2) "when officials themselves have failed to comply with the grievance procedures." *Gibson v. Weber*, 431 F.3d 339, 341 (8th Cir. 2005).

The Court has been provided the affidavit of Barbara Williams, an agency inmate grievance supervisor, who indicates she reviewed the Plaintiff's grievance filing history. *Defts' Ex.* 1. She indicates that while he had filed numerous grievances, only the following were appealed to the director level, *i.e.* the final level of appeal: (1) OR-12-12-00718; (2) OR-12-01099; (3) OR-12-01590; and (4) OR-12-01595.[2] *Id.* at ¶ 9.

In grievance OR-12-12-00718, Plaintiff complains that he is being picked on by Officer Bean and that Bean's supervisor, Sergeant Melugin believes Plaintiff is not telling the truth. *Defts' Ex.* 1(A) at pgs. 5-10. Plaintiff also indicates that other unidentified staff members under Melugin's supervision also pick on him. *Id.* Neither Bean nor Melugin are Defendants in this case. This grievance is marked received on May 15, 2012. *Id.*

In grievance OR-01099, Plaintiff complains that Officer Fenner is picking on him. *Defts' Ex.* 1(A) at pgs. 11-21. Plaintiff states he let Lieutenant Parker know this is occurring. *Id.* Fenner is not a Defendant. Plaintiff has asked that his claim against Parker be dismissed. This grievance

---

[2] The affidavit says only three grievances were completely exhausted but then four grievance numbers are listed as being fully exhausted.

is marked received on July 30, 2012. *Id.*

In grievance OR-12-01590, Plaintiff complains that Nurse Riffee and Mr. Pratt denied him his pain medication. *Defts' Ex.* 1(A) at pgs. 22-25. Neither Nurse Riffee nor Mr. Pratt are named Defendants. Plaintiff also contends these two individual are racist and asked that he should not be around them. This grievance is marked received on December 20, 2012. *Id.*

In grievance OR-12-01595, Plaintiff complains that Nurse Riffee already had his insulin drawn up in the syringe instead of doing it in front of him. *Defts' Ex.* A(1) at pgs. 26-29. Plaintiff asserted that Nurse Riffee drew the insulin for white inmates in front of them. *Id.* Plaintiff believed Nurse Riffee was being racist. *Id.* This grievance was marked received December 28, 2012. *Id.*

In addition to these four fully exhausted grievances, Plaintiff submitted seventeen other grievances. *Defts' Ex.* 1(A) at pgs. 2-4. One of the grievances, OR-13-00001, was about the December 29th incident when Corporal Carpenter, Corporal McDorman and Corporal Green searched his cell and allegedly found five pills in his mattress. *Defts' Ex.* 1(A) at pgs. 30-31. Plaintiff states that Captain Straughn and Lieutenant Parker witnessed it. The grievance is marked received on January 2, 2013.

Barbara Williams indicates that Plaintiff has not fully exhausted a grievance which named or involved Gary Boles, Eric Carpenter, Adam Clark, Zachary Green, Kenneth Holmes, Jeremy Mayhue, James McDermott, Jesse McDorman, Floyd McHan, Donia Parker, and Herbert Straughn prior to filing this lawsuit. *Defts' Ex.* 1 at ¶ 23.

Plaintiff does not dispute this but argues Clark blocked his grievances from leaving his cell. *Resp.* at pg. 3. As he could not utilize the grievance procedure, Plaintiff states his claims cannot be dismissed for failure to exhaust. *Id.* at pg. 3.

Other than these broad conclusory allegations, Plaintiff has submitted nothing to support his allegation that he was prevented from utilizing the grievance procedure. The exhibits submitted to the Court belie Plaintiff's allegation that he was prevented from filing grievances by Clark. Clearly, Plaintiff submitted numerous grievances. He was also able to fully exhaust the procedure as to four of his grievances. Clearly, Plaintiff had access to the grievance procedure; he not only submitted unit level grievances but also appealed the unit level determination. There is no genuine issue of material fact as to whether Plaintiff had access to the grievance procedure.

Furthermore, as pointed out by Allen, Plaintiff failed to name the Defendants in the grievances submitted. The grievance procedures require the naming of the staff involved. As noted above, the Supreme Court in *Jones* has stated that the level of detail necessary is determined by the state procedures. *Jones*, 549 U.S. at 218. In this case, the state procedures require the naming of the involved personnel. Directive 12-16, IV(N), *Defts' Ex.* A at pg. 73 (must exhaust as to all defendants at all levels); *Defts' Ex.* A at pg. 74 (must include the names of involved personnel). *See Champion v. Akins*, 498 Fed. Appx. 670 (8th Cir. 2013)(failure to exhaust where grievances did not name the wardens); *Ferrell v. Norris*, 441 Fed. Appx. 399 (8th Cir. 2011)(failure to exhaust because plaintiff failed to specifically name the defendants in his grievances); *Adams v. Hobbs*, 402 Fed. Appx. 157 (8th Cir. 2010)(grievances failed to speciacally name the defendants).[3]

### 4. Conclusion

Pursuant to Plaintiff's request I recommend that all claims against Sergeant Holmes, Corporal Green, and Lieutenant Parker be dismissed. Further, I recommend that the Defendants motion for

---

[3]The Court notes that the unpublished Court of Appeals cases cited herein are cited pursuant to Rule 32.1A of the United States Court of Appeals for the Eight Circuit Local Rules. Pursuant to Rule 32.1A, the Court notes these opinions were issued after January 1, 2007, are persuasive to the issue presented here, and there are no published opinions on the distinct issue presented here.

summary judgment (Docs. 35-37) be granted and the case dismissed.

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 20th day of August 2014.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE